UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KARA PATRICK, on behalf of the Estate of
Dennis Patrick, individually and on behalf of all
others similarly situated,

      Plaintiff,

v.

MONROE COUNTY, NEW YORK *et al*.,

      Defendant.

Case No.  26-cv-6250

**CLASS ACTION COMPLAINT**

Plaintiff Kara Patrick, Estate Administrator, on behalf of the Estate of Dennis Patrick ("Plaintiff") brings this class action complaint individually and on behalf of all others similarly situated (the "Class") against Monroe County ("Defendant" or "Monroe County") and all other similarly situated governmental taxing authorities (the "Defendant Class").

**INTRODUCTION**

1.      This case concerns Monroe County and other New York counties taking what does not belong to them.  These New York governmental taxing authorities are unlawfully and unfairly taking Class members' property for public use without providing proper compensation.

2.      Monroe County and the Defendant Class (after they foreclose on a property for taxes owed) will sell, retain, or transfer the property. Instead of only keeping amounts owed in taxes and reimbursing taxpayers any remaining balances (*i.e.*, reducing any amounts owed), Monroe County and the Defendant Class unconstitutionally take and retain *all* the property sale proceeds including any extra proceeds ("Extra Proceeds") which can be the entire amount of the sale amount or the full equity of the property not including reductions for what may be owed in taxes and associated fees.  On its face, this is illegal.  The practice violates both the U.S. and New York constitutions.

1

3.      In 2023, in *Tyler v. Hennepin County, Minnesota*, 598 U.S. 647 (2023), the Supreme Court explained that taking proceeds in excess of the tax debt owed is unconstitutional.

4.      The Court noted that "[a] taxpayer who loses her $40,000 house to the State to fulfill a $15,000 tax debt has made a far greater contribution to the public fisc than she owed. The taxpayer must render unto Caesar what is Caesar's, but no more." *Id*. at 647.

5.      In *dicta*, the Court stated:

The principle that a government may not take more from a taxpayer than she owes can trace its origins at least as far back as Runnymede in 1215, where King John swore in Magna Carta that when his sheriff or bailiff came to collect any debts owed him from a dead man, they could remove property "until the debt which is evident shall be fully paid to us; and the residue shall be left to the executors to fulfil the will of the deceased." W. McKechnie, Magna Carta, A Commentary on the Great Charter of King John, ch. 26, p. 322 (rev. 2d ed. 1914) (footnote omitted).

That doctrine became rooted in English law. Parliament gave the Crown the power to seize and sell a taxpayer's property to recover a tax debt, but dictated that any "Overplus" from the sale "be immediately restored to the Owner." 4 W. & M., ch. 1, § 12, in 3 Eng. Stat. at Large 488–489 (1692). As Blackstone explained, the common law demanded the same: If a tax collector seized a taxpayer's property, he was *640 "bound by an implied contract in law to restore [the property] on payment of the debt, duty, and expenses, before the time of sale; or, when sold, to render back the overplus." 2 Commentaries on the Laws of England 453 (1771).

This principle made its way across the Atlantic. In collecting taxes, the new Government of the United States could seize and sell only "so much of [a] tract of land ... as may be necessary to satisfy the taxes due thereon." Act of July 14, 1798, § 13, 1 Stat. 601. Ten States adopted similar statutes shortly after the founding.

*Id*. at 639–40.

6.      Monroe County's and other similarly situated governmental taxing authorities' takings of Extra Proceeds also violates the New York Constitution (which prohibits the taking of private property for public use without just compensation).

7.      Plaintiff seeks to certify a Class of New York property owners and those with an interest in property whose interests in the Extra Proceeds were taken, and to certify a Defendant

Class of New York governmental taxing authorities that foreclosed on the Class members' property and unfairly kept the Extra Proceeds.

8.     In addition, the taking of Extra Proceeds violates the U.S. and New York Constitutions, which do not permit the takings of such excessive fees because they amount to a punitive fine which is disproportionate to the underlying offense of unpaid taxes.

9.     At all times relevant to this action, Monroe County and the Defendant Class have willfully committed unfair and/or deceptive acts and/or practices in violation of the causes of action plead herein.

## PARTIES

10.     Plaintiff Kara Patrick, Estate Administrator, on behalf of the Estate of Dennis Patrick, owned property in Monroe County located at 72-72.5 Hickory Street, Parcel No.: 121.63-1-30 ("the Patrick Property").

11.     Monroe County foreclosed on the Patrick Property due to approximately $8,885.49 in taxes, fees, and/or penalties owed.

12.     The Order and Judgment of Foreclosure was entered on or about August 15, 2019. *See* Exhibit 1.

13.     Subsequent and pursuant to the Order and Judgment of Foreclosure, on or about August 15, 2019, Monroe County, through its Treasurer and tax enforcement officer, conveyed and transferred title of the Patrick Property to Monroe County.

14.     On November 7, 2019, after Monroe County took title to the Patrick Property, the property was sold in an *in rem* foreclosure for $69,000.000. The REM action was E201900269.

15.     Monroe County wrongfully deprived Plaintiff of any opportunity to regain any of the Extra Proceeds from the sale of her former property to a third party, being approximately

3

$60,114.51, which is the approximate difference between the price for which the County sold the property ($69,000.00) and the amount owed of ($8,885.49), and which the County retained without returning to, or for which the County has failed to compensate, Plaintiff. *See* Exhibit 2.

16.    To this day, Monroe County has neither refunded the Extra Proceeds to Plaintiff nor provided an opportunity for her to regain the Extra Proceeds.

17.    Defendant Monroe County is a municipal corporation organized and existing under the laws of New York state.

18.    Monroe County sold, retained and transferred foreclosed properties for public use without providing taxpayers proper compensation or a means to recover Extra Proceeds.

## JURISDICTION AND VENUE

19.    Subject matter jurisdiction of this action exists here because this case concerns federal claims which arise under the Fifth Amendment, Eighth Amendment, and Fourteenth Amendment to the United States Constitution and, as a result, jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331.

20.    Supplemental jurisdiction exists here because this case concerns legal and equitable claims which arise under New York law pursuant to 28 U.S.C § 1367 since those claims arise out of a common nucleus of operative facts with the federal claims that are within the Court's original jurisdiction.

21.    The United States District Court for the Western District of New York is the proper venue for this case, pursuant to 28 U.S.C. §§ 1391(b)(1) and (2), because Defendant Monroe County is within its geographic jurisdiction, a substantial part of the events that give rise to the claims occurred here, and certain property that is the subject of the action is located here, including the property in Monroe County formerly owned by Plaintiff.

4

## FACTS COMMON TO THE CLASS

22.    Monroe County and members of the Defendant Class sold, retained, or transferred properties they had previously foreclosed upon in which Plaintiff and members of Class had an interest, for non-payment of taxes or other local government charges.

23.    Monroe County and members of the Defendant Class administer and oversee the foreclosure and sale of tax-delinquent properties in Monroe County.

24.    According to Monroe County and members of the Defendant Class's current policies and practices, the objective of the tax-foreclosure sale practice is to recover the amount of delinquent taxes and associated costs owed, not to obtain the fair market value of the property.

25.    Monroe County and members of the Defendant Class do not require individualized appraisals prior to sale, nor do they establish minimum bid requirements reasonably calculated to approximate the fair market value.

26.    Instead, properties are typically sold through limited public auctions or similar processes that do not expose the properties to the broader open market.

27.    By structuring the sale process in this manner, Monroe County and members of the Defendant Class ensure recovery of the tax lien while disregarding the substantial equity interest of homeowners.

28.    Monroe County and members of Defendant Class offered no opportunity for the taxpayer to recover the Extra Proceeds, meaning the full amount of the sale proceeds or the full equity and value of the property above and beyond what was owed in taxes and associated fees. Instead, Monroe County and members of Defendant Class unconstitutionally took the full value of the property.

29.    The ongoing failure of Monroe County and Defendant Class to provide a means to Plaintiff and the Class regaining the Extra Proceeds from properties sold, transferred, or retained: (1) constitutes a continuing violation of the U.S. and New York Constitutions, and (2) constitutes continuing wrongful conduct giving rise to the other claims the Plaintiff and Class assert herein.

30.    Monroe County and the Defendant Class retain the Extra Proceeds and fail to allow Plaintiff and the Class an opportunity to obtain Extra Proceeds and do not refund the Extra Proceeds to Plaintiff and the Class: (1) a new violation arises of the U.S. and New York Constitutions, and (2) the other claims Plaintiff and the Class assert herein also newly arise.

31.    The Supreme Court of the United States has declared unconstitutional the practice of local government tax authorities retaining Extra Proceeds of tax foreclosure sales.

32.    In the 2023 *Tyler* decision, the Supreme Court held that taking proceeds in excess of the tax debt owed is unconstitutional.

33.    New York's Real Property Tax Law, Chapter 50-a, Article 11 ("Article 11") established a procedure whereby Monroe County was able to take Extra Proceeds from the sale or retention of foreclosed property in excess of taxes owed without providing a way for the taxpayer to recover the Extra Proceeds.

34.    According to N.Y. Real Prop. Tax Law § 1136[3], the taxing entity takes possession of the foreclosed-upon property in fee simple, "and all persons . . . who may have had any right, title, interest, claim, lien or equity of redemption in or upon such parcel, shall be barred and forever foreclosed of all such right, title, interest, claim, lien or equity of redemption." As a result, when an individual's property was foreclosed upon under the statute, the individual lost all rights to the property, including any property value in excess of the taxes owed by the individual to the taxing entity.

6

35.    Both the Fifth Amendment to the United States Constitution and Article I, Section 7 of the New York Constitution declare the same prohibition: "Private property shall not be taken for public use without just compensation."

36.    The New York and United States Constitutions also prohibit the imposition of excessive fines. The Eighth Amendment of the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed."

37.    In similar language, Article I, Section 5 of the New York Constitution provides: "Excessive bail shall not be required nor excessive fines imposed, nor shall cruel and unusual punishments be inflicted, nor shall witnesses be unreasonably detained."

38.    The Fourteenth Amendment to the United States Constitution makes the Fifth and Eighth Amendments of the United States Constitution applicable to States. It provides, in pertinent part, "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

## CLASS ACTION ALLEGATIONS

39.    Plaintiff requests certification of the following "Class" pursuant to Federal Rule  of Civil Procedure Rule 23.

> All persons and entities, their heirs and successors, who owned or had an interest in real property that Monroe County or a member of Defendant Class foreclosed upon to satisfy unpaid real estate taxes and associated charges and that was subsequently: (1) sold during the Class Period for more than the amount necessary to satisfy such taxes and associated charges and the local government tax authority offered no opportunity for the taxpayer to recover the surplus; (2) retained during the Class Period by the local government tax authority and the value of the property was more than the amount necessary to satisfy such taxes and associated charges and the local government tax authority offered no opportunity for the taxpayer to recover the surplus; or (3) transferred during the Class Period to another entity and

the value of the transferred property exceeded such taxes and associated charges, and the local government entity offered no opportunity for the taxpayer to recover the surplus.

Excluded from Class are Defendants, the presiding Judge, and Court staff assigned to this case, the U.S. Department of Treasury, the U.S. Internal Revenue Service, and any former property owner whose property was sold at foreclosure auction on or after May 25, 2023.

40.     **Numerosity:**  The members of the Class are so numerous that their individual joinder is impracticable. On information and belief, members of Class number at least in the thousands. The precise number of members of the Class and their current addresses are presently unknown to Plaintiff but may be ascertained from County and other local government property and tax records. Class members may be notified of the pendency of this action by mail, email, text, Internet postings, and/or publication.

41.     **Commonality:**  Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members. Such common questions of law or fact include:

a)     Whether Monroe County and the Defendant Class committed a taking of Plaintiff's and the Class members' property without just compensation in violation of the Fifth Amendment of the United States Constitution;

b)     Whether Monroe County and the Defendant Class have been unfairly and unjustly enriched by retaining Extra Proceeds following the sale, retention, or transfer of foreclosed-upon properties;

c)     Whether Monroe County and the Defendant Class have used the Extra Surplus and/ or what they did with it:

d)     Whether Monroe County and the Defendant Class's taking of Plaintiff's and Class members' property for public use" in violation Article I, Section 7 of the New York Constitution;

e)     Whether Monroe County and the Defendant Class imposed excessive fines on Plaintiff and Class members in violation of the Eighth Amendment to the United States Constitution;

f)      Whether Monroe County and the Defendant Class imposed excessive fines on Plaintiff and Class members in violation of Article I, Section 5 of the New York State Constitution;

g)      Whether local laws, procedures or practices on their face or as applied violate the Fifth, Eighth, or Fourteenth Amendments to the U.S. Constitution; and

h)      Whether Monroe County and the Defendant Class are liable for inverse condemnation of Plaintiff's and Class members' property.

42.     **Typicality:** Plaintiff's claims are typical of the claims of the other members of the Class, because, among other reasons, Plaintiff and all members of the Class suffered the same type of injury, namely, Monroe County and members of the Defendant Class unconstitutionally took Plaintiff's and Class members' property.

43.     **Adequacy:** Plaintiff is an adequate class representative because her interests do not conflict with the interests of the other class members she seeks to represent. Moreover, she has retained counsel competent and experienced in class action litigation, including tax surplus takings litigation specifically, and her counsel will prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of the Class.

44.     **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and members of Class individually are relatively small compared to the burden and expense that would be required to separately litigate their claims against Defendant and members of the Defendant Class, so it would be uneconomical and impracticable for so many Class members to individually seek redress for the wrongful conduct. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer

management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

45.     Plaintiff also requests certification of the following "Defendant Class" pursuant to Federal Rule of Civil Procedure Rule 23.

> All local government tax authorities in New York that either: (1) sold real property for non-payment of taxes or other local government charges during the Class Period for a sum greater than the debt and associated charges owed to the tax authorities, and offered no opportunity for the taxpayer to recover the Extra Proceeds; or (2) retained real property for non-payment of taxes or other local government charges during the Class Period that had a value greater than the debt and associated charges owed to the tax authorities and offered no opportunity for the taxpayer to recover the surplus value; or (3) transferred the foreclosed property to another entity during the Class Period that was worth more than the debt and associated charges owed to the tax authorities, and offered no opportunity for the taxpayer to recover the excess value. Plaintiff reserves the right to modify or amend the Defendant Class definition, as appropriate, during the course of this litigation.

46.     The Defendant Class acted in a uniform manner when they took Extra Proceeds and offered no opportunity for taxpayers to recover property. The Defendant Class also failed to return it or compensate the Class members for the value of the Extra Proceeds.

47.     Individual joinder is impracticable compared to establishing a Defendant Class consisting of the numerous local government taxing authorities.

48.     **Commonalit**y:  Common questions of law and fact exist as to all members of Defendant Class and predominate over questions affecting only individual Defendant Class members. Such common questions of law or fact include:

> a)     Whether Monroe County and the Defendant Class committed a taking of Plaintiff's and Class members' property without just compensation in violation of the Fifth Amendment of the United States Constitution;

> b)     Whether Monroe County and the Defendant Class have been unjustly enriched by retaining Extra Proceeds following the sale of foreclosed properties;

> c)     Whether Monroe County's and members of the Defendant Class's takings

10

of Plaintiff's and the Class members' property for public use without just compensation violated Article I, Section 7 of the New York Constitution;

d)      Whether Monroe County and the Defendant Class levied excessive fines on Plaintiff and the Class members in violation of the Eighth Amendment to the United States Constitution;

e)      Whether Monroe County and the Defendant Class imposed excessive fines on Plaintiff and the Class members in violation of the New York State Constitution, Article I, Section 5;

f)      Whether N.Y. Real Prop. Tax Law § 1136, on its face or as applied by Monroe County and the Defendant Class violated the Fifth, Eighth, or Fourteenth Amendments to the U.S. Constitution;

g)      Whether local laws, procedures or practices on their face or as applied by Monroe County and the Defendant Class violated the Fifth, Eighth, or Fourteenth Amendments to the U.S. Constitution; and

h)      Whether Monroe County and the Defendant Class are liable for inverse condemnation.

49.     **Typicality:**  Monroe County's and the Defendant Class members' defenses are typical of the defenses of the other members of the Defendant Class. Plaintiff and all members of the Class suffered the same type of injury, namely, Defendant and each member of the Defendant Class unconstitutionally took Plaintiff's and the Class members' property without providing just compensation.

50.     Defendant and each member of the Defendant Class acted consistently and uniformly pursuant to: (1) N.Y. Real Prop. Tax Law § 1136[2](d); or (2) other state or local law, procedures or practices to take Plaintiff's and the Class members' property rights to surplus equity.

51.     **Adequacy:**  Monroe County is an adequate Defendant Class representative because its interests do not conflict with the interests of the Defendant Class members it represents and Defendant and each Defendant class member share the same defenses.

11

52.    **Numerosity:**  Members of the proposed Defendant Class are too numerous to be individually named. On information and belief, during the Class Period, several hundred local government entities in New York were authorized by New York state or local law to levy and collect property taxes, foreclose on real estate to collect back taxes and associated charges, and bar and forever foreclose taxpayers of their constitutional right to recover Extra Proceeds from their property after Defendant class members sold, retained, or transferred, the property.

53.    It would be impracticable and an undue burden on the courts, Plaintiff and the Class, and members of the Defendant Class to litigate and try several thousand individual actions against every local government tax authority in New York, rendering it uneconomical for Plaintiff and the Class to obtain just compensation for the unconstitutional takings that Monroe County and the members of the Defendant Class have perpetrated.

54.    **Superiority:**  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.

55.    Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

### CLAIMS FOR RELIEF

### COUNT ONE

### VIOLATION OF THE FIFTH AMENDMENT PROHIBITION ON TAKINGS WITHOUT JUST COMPENSATION, 42 U.S.C. § 1983

56.    Plaintiff realleges all previous paragraphs herein.

57.    Plaintiff and members of the Class had a cognizable property interest in their respective properties and have a cognizable property interest in the Extra Proceeds and equity that the Fifth Amendment to the United States Constitution and its Takings Clause protects.

58.    Defendants physically took the Plaintiff's and Class members' real property, and physically took, now possess, and refuse to tender and deliver to Plaintiff and the Class members their Extra Proceeds.

59.    Monroe County and the Defendant Class members have taken the Extra Proceeds from the sale, retention, or transfer to a land bank of the Plaintiff's and Class members' properties without just compensation.

60.    Because Plaintiff and members of the Class have not received just compensation, Plaintiff and members of the Class have been forced to bear public burdens alone which, in all fairness and justice, the public as a whole should bear. This is likewise true in those situations where Monroe County and the Defendant Class members retained properties or transferred properties to a land bank without allowing the Class members any mechanism to obtain the excess value in the properties above the tax debt amount.

61.    Monroe County and the Defendant Class members did not offer to pay just compensation for the excess value before, during, or after taking the property of the Plaintiff and the Class.

62.    Defendants have not provided the Plaintiff or the Class members an adequate procedure to seek just compensation for the taking of their Extra Proceeds and have therefore violated Plaintiff's and the Class members' rights to due process that the Fifth Amendment guarantees.

63.    Plaintiff and the Class members have suffered damages. The Takings Clause requires Defendants to pay Plaintiff and the Class members money damages that constitute just compensation for the taking of their private property.

64.    Monroe County and the Defendant Class members took for public purposes and did not deliver or tender to Plaintiff or the Class members their Extra Proceeds.

65.    Monroe County and the Defendant Class acted under color of state law.

66.    Monroe County and the Defendant Class deprived Plaintiff and the Class of a federal constitutional right and committed a taking from them without providing just compensation.

67.    Monroe County and the Defendant Class members are persons under 42 U.S.C. § 1983.

68.    Monroe County's and the Defendant Class's conduct has caused Plaintiff and the members of the Class to suffer material damages pursuant to 42 U.S.C. § 1983. Monroe County and the Defendant Class members are liable to pay Plaintiff and the Class members money damages for their injuries suffered.

## COUNT TWO

### VIOLATION OF THE EIGHTH AMENDMENT PROHIBITION OF EXCESSIVE FINES, 42 U.S.C. § 1983

69.    Plaintiff realleges all previous paragraphs herein.

70.    The Eight Amendment to the United States Constitution prohibits the imposition of excessive fines and applies to the states through the Fourteenth Amendment. U.S. Const. Amends. VIII, XIV.

14

71.    Plaintiff and the Class assert a viable claim for violation of the Excessive Fines Clause where Monroe County and the Defendant Class members seized and retained Plaintiff's and the Class members' Extra Proceeds for non-payment of property taxes.

72.    Taking the Extra Proceeds of Plaintiff and of the Class because of non-payment of real estate taxes without offering a mechanism to recover the Extra Proceeds is punitive and grossly disproportional to the underlying offense of non-payment of taxes.

73.    Taking the Extra Proceeds of Plaintiff and of the Class because of non-payment of real estate taxes without offering a mechanism to recover to Extra Proceeds is an excessive fine under the Eighth Amendment to the United States Constitution.

74.    Plaintiff and the Class have suffered damages in an amount to be proven at trial, which include the Extra Proceeds.

75.    The unlawful excessive fines under the United States Constitution have injured and damaged Plaintiff and the Class and they are entitled to relief as a result.

## COUNT THREE

### VIOLATION OF THE TAKINGS CLAUSE, ARTICLE I § 7, OF THE NEW YORK CONSTITUTION

76.    Plaintiff realleges all previous paragraphs herein.

77.    The guarantees of Article I, Section 7 of the New York Constitution are generally coextensive with the Takings Clause of the United States Constitution.

78.    For the same reasons why Monroe County's and the Defendant Class members' actions violate the Takings Clause of the United States Constitution, their conduct also violates Article I, Section 7 of the New York Constitution.

79.    Monroe County's and the Defendant Class members' takings of Plaintiff's and the Class members' property without just compensation injured Plaintiff and the Class members, and they are entitled to just compensation and other relief.

## COUNT FOUR

### VIOLATION OF NEW YORK'S PROHIBITION ON EXCESSIVE FINES, ARTICLE I § 5 OF THE NEW YORK CONSTITUTION

80.    Plaintiff realleges all previous paragraphs herein.

81.    Article I, Section 5 of the New York State Constitution prohibits the imposition of excessive fines.

82.    New York's Excessive Fines Clause, N.Y. Const. Article I § 5, requires the same analysis as the federal clause.

83.    For the same reasons Monroe County's and the Defendant Class members' actions violate the Excessive Fines Clause of the United States Constitution, their conduct also violates Article I, Section 5 of the New York State Constitution.

84.    Plaintiff and those similarly situated have suffered damages in an amount to be proven at trial, which damages include the Extra Proceeds.

## COUNT FIVE

### UNJUST ENRICHMENT

85.    Plaintiff realleges all previous paragraphs herein.

86.    Monroe County and the Defendant Class have been enriched at Plaintiff's and the Class members' expense.

87.    Equity and good conscience do not permit Monroe County and the Defendant Class to retain the Extra Proceeds from foreclosed properties.

16

88.    Circumstances create an equitable obligation running from Monroe County and the Defendant Class to Plaintiff and the Class.

89.    Monroe County and the Defendant Class have received money, property, and/or value of which they are not entitled.

90.    Monroe County and the Defendant Class were enriched when they collected and retained the Extra Proceeds.

91.    Monroe County and the Defendant Class are not entitled to the Extra Proceeds in the properties of which they prevented any mechanism for Plaintiff and Class members to recover the surpluses.

92.    Plaintiff and the Class are entitled to the surplus debt wrongly ceased.

93.    When Defendant and the Defendant Class members took and retained Extra Proceeds, it forced Plaintiff and Class to make a greater contribution to the Defendant and the Defendant Class members than they owed.

94.    For the foregoing reasons, Plaintiff and the Class members are owed restitution in the amount of the Extra Proceeds collected by Monroe County and the Defendant Class.

<u>**COUNT SIX**</u>

**MONEY HAD AND RECEIVED**

95.    Plaintiff realleges all previous paragraphs herein.

96.    Monroe County and the Defendant Class wrongfully received the Extra Proceeds belonging to Plaintiff and the Class members.

97.    Monroe County and the Defendant Class benefitted from receipt of the Extra Proceeds.

98.    Under principles of equity and good conscience, Monroe County and the Defendant Class should not be permitted to keep the Extra Proceeds.

99.    Monroe County and the Defendant Class wrongfully received Extra Proceeds belonging to Plaintiff and Class members when they collected the Extra Proceeds.

100.    Plaintiff and the Class, through the Extra Proceeds being taken by Monroe County and the Defendant Class to fulfill tax debts of a lesser value, have made a greater contribution to Monroe County and the Defendant Class than they owed. Equity and good conscience do not permit Monroe County and the Defendant Class to retain the Extra Proceeds.

101.    For the foregoing reasons, Plaintiff and the Class are owed restitution in the amount of the Extra Proceeds collected by the Monroe County and Defendant Class.

## COUNT SEVEN

### EQUITABLE ACCOUNTING

102.    Plaintiff realleges all previous paragraphs herein.

103.    Monroe County and the Defendant Class, as public bodies, had a fiduciary, or legal relationship to Plaintiff and the Class as taxpayers, citizens, residents, voters, owners of private property within their jurisdiction, and members of the body politic. That relationship gave rise to an obligation for Monroe County and the Defendant Class to hold in trust Plaintiff's and the Class's Extra Proceeds, and a legal obligation to account to Plaintiff and the Class for the fate of Plaintiff's and Class's Extra Proceeds.

104.    Through the power of the state and its political subdivisions, Plaintiff's and the Class's money or property was entrusted to Monroe County and the Defendant Class, voluntarily or involuntarily, imposing the burden of accounting.

105.    As pled in the alternative, there is no adequate remedy at law.

106.     There is no justification to impose a demand requirement in the circumstances of this action. Monroe County and the Defendant Class have already failed or refused to turn over the Extra Proceeds, or spent them, or included them in their budgets as revenue, or retained the properties and the excess equity or transferred the properties to land banks without providing Plaintiff and the Class members a mechanism for obtaining the Extra Proceeds.

107.     When foreclosing on the properties, Monroe County and the Defendant Class had a burden of accounting to demonstrate compliance with Article 11 or other state or local law, procedure or practice, as well as to demonstrate that any fees that Monroe County and the Defendant Class associated with the foreclosure were not arbitrary, grossly disproportionate, and/or excessive fines.

108.     Because Monroe County and the Defendant Class, not Plaintiff or the Class, are in possession of the relevant financial records (tax records), Plaintiff and the Class cannot ascertain what portion of the outstanding taxes and associated charges that led to foreclosure of the Plaintiff's and Class members' properties was due to the tax collecting entity of Monroe County and members of Defendant Class and what portion was due to other local government tax authorities.

109.     Similarly, because Monroe County and the Defendant Class, not Plaintiff or the Class, are in possession of the relevant financial records (tax records), and because N.Y. Real Prop. Tax Law § 1136[2][d] and other state or local laws, procedures and practices purported to allow Monroe County and the Defendant Class to choose how to distribute collected Extra Proceeds among government entities, Plaintiff and the Class cannot ascertain how the Extra Proceeds or equity were distributed.

110.     Furthermore, Monroe County and the Defendant Class, not Plaintiff or the Class, may have imposed fees for the sale, maintenance, and/or transfer of properties that could alter the

surplus owed to Plaintiff and the Class members, and Plaintiff and the Class cannot ascertain these values that may have been imposed either lawfully or unlawfully.

111.    Therefore, absent an accounting, there would be no sufficient way to ensure that Plaintiff and the Class are returned the correct amount of Extra Proceeds from the correct entities.

112.    For the foregoing reasons, Monroe County and the Defendant Class must produce financial records related to the collection, distribution, and spending of Extra Proceeds to determine which entities owe what portion of the Extra Proceeds to the Plaintiff and the Class.

## COUNT EIGHT

## INVERSE CONDEMNATION

113.    Plaintiff realleges all previous paragraphs herein.

114.    Monroe County and members of Defendant Class intruded on the private property of Plaintiff, engaged in a taking pursuant the New York Constitution and U.S. Constitution, and failed to compensate Plaintiff for their actions.

115.    Plaintiff and the Class have suffered damages in an amount to be proven at trial, which damages include the Extra Proceeds.

## COUNT NINE

## DECLARATORY RELIEF PURSUANT TO RULE 23(b)(2)

116.    Plaintiff realleges all previous paragraphs herein.

117.    Declaratory relief is intended to minimize "the danger of avoidable loss and unnecessary accrual of damages." 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2751 (3d ed. 1998).

118.    There is an actual controversy between Plaintiffs and Defendants. Defendants have acted or refused to act on grounds applicable to the Class by implementing and maintaining

policies and practices governing the foreclosure and sale of tax-seized properties and as such seek relief.

119.    Pursuant to 28 U.S.C. § 2201, the Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

120.    Defendant and the Defendant Class refuse to address their unfair conduct.

121.    Accordingly, and based on Defendants' failure to act, Plaintiffs seek a declaration that Defendants cease their actions and disclosure to all persons who own have been effected.

122.    The declaratory relief requested herein will generate common answers that will settle the controversy related to the allegations herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands that:

a)    The Court determine this action may be maintained as a Class action pursuant to Federal Rule of Civil Procedure 23;

b)    Designate Plaintiff as class representative and appoint Plaintiff's counsel as counsel for the Class;

c)    The Court determine this action may be maintained as a defendant class action pursuant to Federal Rule of Civil Procedure 23 with Monroe County being designated as the class representative;

d)    The Court award Plaintiff and the Class compensatory damages in an amount to be determined at trial and equitable restitution to Plaintiff;

e)    The Court order Monroe County and the Defendant Class to provide an accounting of their takings of the Extra Proceeds;

f)    The Court award Plaintiff and the Class their costs, reasonable litigation expenses, and reasonable attorneys' fees, as permitted by law and statutes brought herein; and

g)    The Court grant such other and further legal, declaratory, and equitable, relief as the Court may deem just and proper.


### DEMAND FOR JURY TRIAL

Plaintiff respectfully requests a jury on all triable issues.


Dated:  February 27, 2026.

Respectfully submitted,


 /s/  *Charles J. LaDuca*
Charles J. LaDuca, WD0013811
Brendan S. Thompson
Claire A. Esmonde
CUNEO GILBERT FLANNERY & LADUCA, LLP
2445 M Street NW, Suite 740
Washington, DC 20037
Telephone: (202) 789-3960
charlesl@cuneolaw.com
brendant@cuneolaw.com
cesmonde@cuneolaw.com


Robert K. Shelquist
CUNEO GILBERT FLANNERY & LADUCA, LLP
5775 Wayzata Blvd., Suite 620
St. Louis Park, MN 55416
Telephone: (612) 254-7288
rkshelquist@cuneolaw.com

Charles Barrett
CUNEO GILBERT FLANNERY & LADUCA, LLP
4235 Hillsboro Pike, Suite 300
Nashville, TN 37215
Telephone: (615) 293-7375
cbarrett@cuneolaw.com


Marco Cercone
RUPP PFALZGRAF LLC
1600 Liberty Building
424 Main Street
Buffalo, New York 14202
Telephone: (716) 854-3400
cercone@ruppfalzgraf.com

*Attorneys for Plaintiff and the Class*